**Florence Lipkin,**
Plaintiff,

*vs.*

**Sydney Jacoby et al.,**
Defendants.

*New Castle, July 17, 1964.*

*Irving Morris* of Cohen, Morris & Rosenthal, Wilmington, Del., and *Leonard I. Schreiber,* New York City for plaintiff.

*Aaron Finger* and *Louis Finger* of Richards, Layton & Finger, Wilmington, Del., for defendants.

Marvel, Vice Chancellor: The complaint herein charges that the individual defendants, who are directors of the corporate defendant, committed a breach of fiduciary duty owed to their corporation in

(1)

causing it to enter into a contract for the acquisition of an 85% interest in land located on West 57th Street in the City of New York with knowledge that two members of their board, the defendants Solomon Klausner and David Goodman, were simultaneously acquiring a 15% interest in said property for themselves and others at a vastly disproportionate price.

In brief, the transaction under attack involved the acquisition of the fee to the property in question from a group headed by one John Guidera and the leasing back of such lands to a corporation controlled by the sellers. Plaintiff charges that while Mr. Klausner and others of his group contributed only 2.85% of the purchase price for the parcel of land in question, it received a 15% interest therein, while on resale of the property to the Guidera group Mr. Klausner and his associates received a 775% return on their investment as opposed to a mere 2.9% return to Basic.

According to plaintiff's theory of her case, which is brought derivatively for the benefit of the corporation, not only are the defendants Klausner and Goodman accountable for the personal profits made by them at the expense of Basic Properties but that the other director defendants must also account for causing their corporation to enter into a transaction so allegedly unfair as to be incapable of authorization by the directors. Plaintiff contends that the overreaching complained of was achieved through inside domination and control, allegedly exercised by the defendant Klausner and that the profit made in the transaction complained of by what he terms an insider group (of which Klausner admittedly was a member) equitably belongs to Basic Properties. Plaintiff does not charge that the defendants Klausner and Goodman improperly appropriated a corporate opportunity to themselves but rather that the transaction was so inherently unfair to the corporation that it was not susceptible of being ratified by Basic's board of directors. Klausner at the time was chairman of the board and treasurer of Basic as well as its largest single stockholder. Goodman was also a stockholder. However, the number of shares of Basic held by its other ten directors was nearly three times the combined number of shares held by Klausner and Goodman. Furthermore,

the cash paid for shares of stock by the other directors vastly exceeded that paid in by the latter two directors.

The answering defendants admit that on or about February 2, 1952 the members of the board of directors of Basic Properties (other than the defendants Klausner and Goodman) voted to authorize their corporation to enter into an agreement to purchase from a joint venture in which the defendants Klausner and Goodman were members an 85% interest in a project for the building of a Holiday Inn on West 57th Street in New York. The answer also admits that while Basic agreed to pay $1,942,853 for such 85% interest, the obligation assumed by the joint venture for retention of its 15% interest totalled only $57,-143. The answer points out, however, that such investment was not only expressly approved by the non-interested officers and directors of Basic Properties (being all the officers and directors other than Klausner and Goodman) after a full disclosure of the facts, but that such transaction was both acquiesced in by plaintiff and in effect ratified by Basic's stockholders. The answer also sets forth verbatim an article of Basic's corporate charter to the effect that no contract or other transaction between the corporation and any other corporation, shall, in the absence of fraud, be invalidated by the fact that any of the directors of Basic are pecuniarily or otherwise interested in such other corporation, provided a full disclosure of such interest is made to the board. It is also pointed out by defendants that the by-laws of Basic contain a standard conflict of interest article which recognizes the right of a director, under certain limitations, to deal with his corporation.

The facts adduced at trial disclose that in November 1961, the law firm of Goodman and Mabel, the Mr. Goodman of the firm being a cousin of the defendant Goodman, learned that the site for the proposed Holiday Inn, a project which promised an attractive return of 13%, could possibly be acquired subject to a lease back agreement. The facts about the project were then passed on to a Mr. Reuben Horowitz, a real estate investor, who agreed that the property would be a good buy at a yield of 12%. Mr. Horowitz, who had on several occasions acted as a so-called real estate finder for Mr. Klausner, then consulted the latter and an informal agreement was reached under

the terms of which it was agreed that not only would Klausner pay 50%, Horowitz 25%, and the attorneys, Goodman and Mabel, 25% of the amounts required for the down payment for such property, but that such persons would also assume, on the same percentages, the responsibility for payment of the balances due for acquisition of the property. A formal agreement of purchase was thereafter entered into on January 9, 1962, executed by Mr. Horowitz's attorney on behalf of the purchaser hereinafter referred to as Lillian Realty Associates. Such agreement provided for a purchase price of $2,000,000 and down payments stipulated therein were duly made.

In the meantime, Basic Properties, Inc., which had been incorporated on September 13, 1961, had remained a corporate shell until in January 1962 it was caused to receive cash and several properties (in no way connected with the Holiday Inn project) in exchange for stock and began to stir some interest in Wall Street as an investment possibility. Thereafter, its directors began to look about for more substantial properties and to explore the possibilities of an underwriting. Klausner thereupon indicated that the Holiday Inn property might be a desirable acquisition for Basic Properties and discussed its possible sale to Basic with Mr. Horowitz, who was reluctant to give serious consideration to such a proposition due to the fact that he had not only done preliminary work on a possible disposal of the property through a public offering by Lillian at a 11% return to the syndicate but had also been exploring the possibilities of a private sale, which, if consummated, would net Lillian a $400,000 profit. Ultimately, however, Horowitz agreed to participate in a sale to Basic on the basis of an assured yield of $10\frac{1}{2}\%$.

In evaluating the merits of plaintiff's charges, it must be noted, first of all, that the transaction in question was fully disclosed to those directors of Basic Properties present at a meeting of the Executive and Real Estate Committee of such corporation held on February 7, 1962. At such meeting an attorney member, the defendant Bronson, pointed out that he considered the proposal "* * * fair to Basic since (a) the Horowitz Group had negotiated the transaction at a time when the Company was not financially in a position to do so, (b) the Horowitz Group had paid the initial $100,000 under the contract of

sale themselves and had assumed the liability for the balance of the purchase price at a time when they did not know whether the Company would ever be in a position to entertain their proposal, and (c) the proposal would result in a return of approximately 10½% to the Company of its investment, which was favorable in comparison with the other investments of the Company". And, while the defendants Klausner and Goodman attended such meeting as committee members, they abstained from voting for the proposal which was unanimously approved by the other five directors present.

At a subsequent meeting of the board of directors held on February 21, 1962, a meeting which was not attended by the defendants Klausner and Goodman, the minutes of the meeting of the Executive and Real Estate Committee of February 7 pertaining to the Holiday Inn project were read, questions were asked, and with one director, the defendant Greenstein, abstaining, full ratification of the action taken by the Executive and Real Estate Committee was given by the directors present.

As a result of Basic's purchase of an 85% interest in the project for $1,942,857, an amount based on the accepted practice of capitalizing net rental to be received at the rate of 10½%, the way was admittedly prepared for the earning of a substantial profit on the part of Lillian Associates. What plaintiff fails to recognize is that Lillian had previously committed itself to paying $2,000,000 for the property and had made a down payment of $300,000. What Lillian sold to Basic was an 85% interest in the property, a transaction in which Lillian made a profit of $242,857. However, this amount can not fairly be termed a contribution to purchase price by Basic. Furthermore, when, because of a break in the market in the early summer of 1962, Basic was forced to resort to bank loans rather than an underwriting to finance its obligations in the project, such loans were obtained through the personal endorsement of Mr. Klausner and others of the defendant directors. Finally, Klausner, as a member of Lillian, remained personally liable on the purchase money mortgage called for in the January 9, 1962 agreement, and in point of fact Basic contributed nothing to the transaction other than borrowed funds for the repayment of which Klausner and others were guarantors. Thus, when at

the end of the year a payment to the bank, accomplished through stock purchases by several of the directors, had proved a mere palliative and a sell-out became necessary, Basic profited to the extent of nearly $50,000 without having actually invested any cash in the project. Furthermore, in order to consummate the resale to the Guidera group at a price of $2,200,000 (in the course of which Basic's obligation on the $1,200,000 mortgage was cancelled) Mr. Klausner gave up a fourth of his interest in Lillian in order to induce Mr. Horowitz to surrender his interest in such syndicate so that the Guidera group could reacquire a 100% interest in the hotel project.

Summarizing the results of the entire transaction, it appears that the respective profits of Lillian and Basic as a result of the resale, adjusted so as to take the mortgage cancellation into consideration (a vital factor ignored by plaintiff) Lillian received total benefits from the resale of $234,285, while Basic's benefits totalled $1,965,715. Thus, in final analysis, the Lillian group received 10.65% of the total proceeds of the resale, while Basic's share thereof was 89.35%. Furthermore, were this analysis of the transaction not in itself a refutation of plaintiff's contentions that an unconscionable act had been committed by Basic's directors in causing it to become involved in the Holiday Inn project, plaintiff has failed to establish any motive for the corporate directors (other than Klausner and Goodman) to vote against their substantial interests as stockholders of Basic. In other words, notwithstanding the part played by the defendants Klausner and Goodman in the entire transaction here in issue, the record fails to establish a case of self-dealing or other breach of fiduciary duty on the part of those members of the board of Basic who approved the transaction and who were in no way involved in the Lillian syndicate. Finally, it must be noted that the actual transfer of the Holiday Inn property took place in two stages, the first consisting of Basic's contract to dispose of its 85% interest executed on December 27, 1962, a transaction followed some weeks later by Lillian's agreement to dispose of its 15% interest after Mr. Horowitz, who, unlike Lillian, was under no compulsion to sell, had finally agreed to being bought out. In fact, Mr. Horowitz's reluctance to sell caused a delay in the $500,000 payment to Basic by the Guidera group with almost disastrous results. In summary, the record utterly fails to

sustain any of plaintiff's charges that the independent directors of Basic voted for any reason other than what they conceived to be the best interests of their corporation.

In a situation in which there has been no showing that the transaction under attack was in fact one between the corporation and its controlling officers and directors (and no claim has been advanced nor showing made of the taking of a corporate opportunity) plaintiff's complaint must be dismissed. If the independent directors of Basic made a bad bargain, they injured themselves, *Finch v. Warrior Cement Corporation*, 16 *Del.Ch.* 44, 114 *A.* 54, and *Gropper v. North Central Texas Oil Co.*, 35 *Del.Ch.* 198, 114 *A.2d* 231, and in point of fact Basic actually profited in the transaction. Furthermore, the facts clearly establish that Lillian Associates acquired their interest in the Holiday Inn project through channels in no way related to the affairs of the then nascent corporation known as Basic Properties, Inc., *Johnston v. Greene*, 35 *Del.Ch.* 479, 121 *A.2d* 919. A full disclosure of Lillian's position having been made to the board members, approval of the transaction by seven of the ten directors who had no interest in Lillian Associates clearly establishes the validity of the transaction, there being no showing of fraud, *Fidanque v. American Maracaibo Co.*, 33 *Del.Ch.* 262, 98 *A.2d* 311. Even had there been a showing of domination of the board by insiders, the return to Basic of 10½% gained in the transaction would have commended itself to an independent board in the light of Basic's previous business experience and the returns prevailing in the market. Compare *Johnston v. Greene,* supra.

In view of the above it is unnecessary to consider defendants' contentions concerning stockholder ratification or the defense that plaintiff is estopped to sue because of her vote, along with a majority of Basic's stockholders, in favor of a reclassification plan, it being pointed out that information concerning the Holiday Inn project was furnished to plaintiff and the other stockholders in proxy material mailed out prior to the vote.

On notice, an order may be submitted entering judgment in favor of the individual defendants.